>    Testatrix had long before her death made a memorandum giving all her property to a daughter in exclusion of her son. The memorandum was such that, if properly witnessed, it would have been good as a will. Held, that a will of the testatrix whose terms were the same as those of the memorandum would be admitted to probate, though testatrix became unconscious after signing the will, and died on the next day, and was so weak as to be unable to assent to the terms of the will when read to her, or publish it as her will, or request the witnesses to sign it, except by nodding assent to proper questions asked her as to those matters.

In the matter of the probate of the last will of Virginia Wilde. Probate decreed.

Dailey & Bell, for proponent.
Charles H. Kelby, for contestant.

CHURCH, S.  The question of whether the deceased possessed sufficient testamentary capacity to execute the will in question cannot be readily determined. At the time of the execution of the will, deceased was very weak and ill, and suffered from some trouble with her throat which made articulation so difficult that she could not speak, except to say "Yes" or "No," and preferably to even using these words she nodded her head in reply to questions. While she was in this condition the executor named in the will prepared the will in question, without any request or direction from the deceased to do so, following what he understood were the wishes of the deceased. Then the executor and the witnesses assembled at the bedside of the deceased, and he read over the will and asked if she understood it, to which she nodded an assent. She could not be lifted in bed to sign it, but did so on the bed, the executor guiding her hand. She then nodded assent to the query as to its being her will and to its being signed by the witnesses, who thereupon signed the will in the presence of the deceased. Except for these marks of assent given by the deceased, there is no evidence showing that she understood and comprehended the nature of what she was doing; and it is therefore left to the court to decide whether, by her conduct at that time, she did understand what she was doing, and gave her assent to the execution of this will, or whether it was a mere affirmative act, given without thoroughly appreciating the effect of what she was doing. It appears that a short time after the execution of this paper the deceased lapsed into unconsciousness, and died on the following morning.

Under all ordinary circumstances, the execution of a will in this manner would not be deemed a compliance with the statute, as the deceased was incapable of directing any particular provision which she might desire to have contained therein, or of protesting against

any of the provisions as it was drawn. But after a careful consideration of all the testimony in this case, showing all of the surrounding facts, and showing the past wishes and intentions of the deceased, I have reached the conclusion that this particular will should be admitted to probate. The deceased left, her surviving, two children,—a son and a daughter. By the will the daughter inherits the entire estate. It appears that, in a memorandum which the testator had drawn and signed a long period before her death, she stated that she wished all of her property to go to her daughter. This memorandum, if it had been properly witnessed, would have been sufficient to constitute a will. The reason of her thus wishing to make her entire bequests to her daughter can be readily understood and appreciated. The son had been absent from the city for many years, and although, as it has been shown by the letters which the deceased sent to him, she evidently had a high degree of affection toward him and his family, yet, as her estate was a small one, and as she had been to a certain extent dependent upon her daughter, it was not unnatural that she should give her entire estate to her daughter, with whom she had been in such close relations for many years. The executor, Mr. Chew, who was an old friend of the family and of the deceased, knew of these facts, and drafted the will offered for probate in accordance with these expressed intentions, and with this memorandum of the deceased. He testified that he explained these provisions very carefully to her, and that by the expression of her eyes she appeared to intelligently understand it, and by her nods gave her assent thereto. As this was, therefore, in accordance with her previously expressed wish, and was, in effect, but a formal execution of that which she had informally done, and as she, by these marks of assent, approved of the same, I am led to believe that she possessed sufficient testamentary capacity to appreciate that fact, and also to properly execute and publish the same.

As the circumstances of the execution of this will are so unusual, the counsel for the disinherited son was amply justified in making this contest, and is to be commended for the careful and intelligent manner in which he conducted the same.

Let a decree be presented for settlement, admitting the will to probate, and directing the issue of letters testamentary. Probate decreed.